Our third case for this morning is Huber v. Anderson. This morning we have Huber v. Anderson. All right, Mr. Wick. Good morning, Your Honors. May it please the Court. Mr. Huber suffered 11 years of unlawful supervision and imprisonment at the hands of the state, and that's undisputed. The real issue in this case is whether Mr. Huber will get to present his case to a jury, who will then decide who's credible and whether they're liable under Section 1983. I would like to focus on two points. First, that the holding in Heck v. Humphrey delayed the accrual of Huber's claims until a judge vacated his sentence in 2014, which makes all of his claims in this lawsuit timely. Second, summary judgment was inappropriate in this fact-intensive case because there were disputed material facts at issue, because a jury should get to decide the credibility of the various witnesses, and because all the facts and reasonable inferences should have been resolved in favor of the non-moving party Huber, but they were not. Now, as you know, most of the claims in this lawsuit were ruled time-barred. That holding is erroneous because Heck v. Humphrey says that no claim for damages can be brought, which questions the fact or duration of custody, until that sentence or conviction that's related to the custody is vacated or otherwise impugned. So I take it Mr. Huber's relying on the Eighth Amendment and on the doctrine that being in prison after the time your sentence has expired is one of the ways the Eighth Amendment can be violated. Yes. Yeah. And so the purpose of Heck is to prevent collateral attacks on a criminal sentence. And so if Mr. Huber had brought his claim, say in 2008 or 2009, as the district court suggests, he would have been barred by Heck because it would have directly attacked the validity of his sentence he was currently serving in prison at the time. So that's why Heck delayed approval of his claim, and the court's reliance on Wallace v. Cato was misplaced. Wasn't there one person who was not considered to be Heck-barred? Yes. Bach and Walter were his parole agents. They were like the most recent parole agents. They were ruled to be not time-barred. Wisconsin has a six-year statute of limitations, and the events with them happened between 2011 and 2013. So those were ruled timely, and the judge reached the merits on the two counts against Bach and Walter. Every other claim was ruled time-barred. Okay. Or otherwise, it got dismissed because it relied on the time-barred claims. The failure to intervene in the voting rights claims were dismissed because they relied on the other claims not being time-barred. Right. I wonder if you could speak a little more specifically about some of the defendants, because each person plays a slightly different role, and we have, in addition to Heck, we have simply the question whether it was correct to grant summary judgment more generally. So I'm not sure how you pronounce his name, Kasperzak? That's how I've been saying it, Kasperzak. Roughly? Yeah. Okay. So I'm concerned about the directness of his role in this and why it may not have been appropriate on that ground to dismiss the case against him. Right. He's sort of up there above everybody and lots of people, whether it's a prison warden or a jail sheriff or somebody, are just too far removed to have personal liability. Yes. So the defendants correctly point out that respondeat superior does not apply here, and that's not what we're trying to rely on. Our argument is that if you look at the order which Kasperzak signed, which reinstated Huber's probation, that's at docket 68-2, it's defective or at least suspicious on its face. And so Kasperzak admits he didn't really know anything about Huber, he didn't look at his file, didn't do anything, didn't do any due diligence, he just rubber-stamped it. But how much does he do? I mean, I guess he probably did rubber-stamp it, I'm thinking, but I'm having trouble converting that into a deliberate indifference notion. It sounds like he just, these papers come in front of him and he signs stuff. Well, if he had looked, if he had actually looked at the paper, which the standard for deliberate indifference is ignoring a known risk or action that's so ineffectual under the circumstances is tantamount to deliberate indifference. And so our argument is that his actions either ignored it or it was just so ineffectual. If you look at the face of the order, it says, now, and the face of the order is important, too, because that's what he looked at. He didn't look at anything else. It said that his probation should have ended on November 3, 1992, and he's being asked in March 1996 to sign an extension of probation. That should raise a red flag in the first place. In the second place, there was a warrant out for his arrest on May 19, 1993. Again, we're in March 1996. It's unlikely that a suspect would be able to obey the police and his probation officer that long. It's at least maybe something you don't see every day. Some people are creative, but, you know, I. So we say, you know, he should have picked up the phone and called either Hartman or Anderson and asked what's going on in this case. We don't have, you know, there's no evidence that Kasperczak conspired with Anderson and Hartman, but, you know, there's no evidence either way that he did or did not. But we would say just from the face of the order, it's suspicious enough that he should have done more than stamp it. Okay, and now can you talk a little bit about Walzak? Because as far as I can tell, there's a retaliation claim against him, there's an access to court claim, and an Eighth Amendment claim. But Walzak also seems to be a bit peripheral to all of this. So Walzak was Huber's probation officer after his probation was illegally extended. But how does he know? I mean, somebody sort of shows up in his office and there's an order. I mean, clearly I would say at this point erroneously issued, but he's not really supposed to be you, you know, digging to the bottom of it. Right. Or is he? So it is probably true that when Huber was assigned Walzak in 1998, I believe it was, that Walzak didn't know that Huber's probation was illegitimate. However, we believe he found out at a later date and then actually pulled the exculpatory documents from Huber's case file to prevent him from making his case and getting this all resolved much earlier. So what's your evidence that he did that? Well, the case file didn't have the Form DOC-44, among other things, in it that told his time. So the basis for extending Huber's probation was the total time form, the DOC-44. That was not in Huber's case file that was presented during his revocation hearing and during his post-conviction motion challenging that revocation. Later, about eight or nine years later, in his federal habeas lawsuit, it magically appears in Huber's case file, although it had never been there since. So the question is, how could a form that was not in the file at that time materialize after some eight or ten years after the fact? We think it's suspicious, and the motive is that Walzak didn't like Huber. Huber accused him of stealing his restitution payments because Walzak— Is it these weird payoffs that Huber is alleging? I don't know if it's payoffs necessarily. Well, yes. Huber was saying Walzak kept saying I needed to pay him supervision fees and pay him restitution, even though the guy that he stole the money from in 1988 had been dead since 1989, and no one from his estate had ever made a claim for restitution. So the restitution payments he'd been making his whole time since his conviction, it's not clear where those were going. And the supervision fees, in addition to being illegitimate because Huber wasn't really on probation anyway, they were not a reason to keep him on probation. Walzak even admits that in his discovery responses. He says that's not a good enough reason to keep someone on probation. And he tries to fall back and say that Huber was absconding, but his answer as to why he revoked Huber changes depending on what someone says in response. And on the two counts that were ruled on on the merits, that was the Eighth Amendment deliberate indifference claim against Bach and Walter and then the access to the courts claim against Bach and Walter. Summary judgment there was inappropriate. A reasonable jury could have found in favor of Huber given the facts and the record, and the judge improperly there made credibility determinations that really were the job of the jury. There's disputed material facts there, most obviously the subjective mind states of the defendants, but that will always be the case in a Section 1983 case. But Bach claims that the DOC 44 with the toll time form, she says that wasn't in the file, but her counterpart Hanson looked in the file and found it. So that's an important fact because one of Bach's defenses is, well, sure, I kind of brushed you off. However, the form wasn't in the file, so I wouldn't have found what you asked me to look for anyway. So that's a disputed fact.  Walter's action, she's the supervisor. She claims she called the CRU, the Central Records Unit, and verified with them. But first of all, there's no record that she actually made the phone call, but more importantly, we don't know what she said on this phone call. If she merely said, was Huber convicted and does he have a 10-year sentence and an 81-month sentence, should he be on parole? That's a different phone conversation from, hi, CRU, I want you to pull the agent's chronological logs, and I want you to pull the DOC 44 and the related forms and see the inconsistencies here and analyze whether you think he really should be on probation or in prison or on parole at this time. Right, so I gather at some point he's managed to assemble the relevant documents himself, and they refuse. So they don't really even have to do the legwork. They refuse to look at them? Yes. That's pretty late in the day. Remind me when that is. So Huber gets the documents in his federal habeas case. I believe it was 2010. Okay. And then he's coming up on being released on parole. So he has his first meeting with Bach and Walter by telephone while he's still in prison, and there's a social worker with him. And that's when they say this isn't our job? Right, that's the first time. I mean, they said it multiple times. But the social worker even offered to fax the documents and said, here, take a look, what you think. And it was either Bach or Walter who said, no, don't fax them. I don't want to look at it. That's not my job. My job is to keep you on parole, keep you under supervision. More or less, even though it's a mistake, he's there sitting there saying, I don't belong in this status. Right. Yeah. And, you know, they probably hear that from other prisoners who don't have a legitimate claim. Indeed. But he's offering documentation. He's offering documentary proof. And there's no question at all about the genuineness of these documents, or is there? No. I mean, a Wisconsin state court vacated the sentence, and the state here doesn't dispute that all this was illegitimate. The real dispute is over the state of mind of the defendants. Mm-hmm. But, if Your Honors have no more further questions, I'd like to reserve the remainder for rebuttal. Okay. That would be fine. Thank you. Ms. Vandermeuse. Good morning, Your Honors. Jennifer Vandermeuse for the State Defendants. Twenty-two years ago, probation agent Gloria Anderson made a serious but honest mistake in extending Mr. Huber's probation when it had already expired. Twenty years later, in 2016, Mr. Huber brought a Section 1983 complaint against her and five other defendants alleging various violations for committing or perpetuating this error. And the district court, as we know, dismissed many of those complaints on statute of limitations grounds and the remaining on the merits. Today we're asking the court to affirm for three reasons. First, it's the state's position that the prolonged detention claim against Defendants Anderson, Hartman, and Kasperczak were properly dismissed on statute of limitations grounds and would fail on the merits in any event. So you're relying on Heck, because I have a real problem with Heck. This is one of the prices of the Heck rule, basically. That if you need to wait until the sentence has been vacated, you can wind up with some pretty old cases. And that's a choice the Supreme Court appears to have made. Yeah, and Justice Scalia was concerned about that, as he talked about in Wallace. Well, he may have been, but the Supreme Court decided it's Heck, which is what binds us. Right. So this is the way the analysis goes. You need to first figure out your amendment violation. And here we all agree it's an Eighth Amendment violation. Right. And then you need to figure out when your Eighth Amendment violation accrued, because from the accrual date is when we analyze whether Heck applies. The point of Heck is that the accrual date is when a court vindicates the position that there shouldn't have been custody. I understand your brief to be principally contending that Heck is limited to judicial acts. And that leads me to ask, well, what do you think about the significance of Edwards v. Balasag? Okay, Edwards v. Balasag, that was the case where there was a hearing examiner. It's in the intra-prison administrative hearing. Good faith. That extends the length of custody. Right. The Supreme Court says Heck applies fully to these administrative hearings that affect the duration of custody. Well, that seems to be what happened here. You had administrative proceedings that affected the length of custody. So whether or not Heck is limited, as you contend it should be, Edwards v. Balasag is not. How is your position consistent with Edwards? So to answer that question, I need to make sure that we're clear about when it's our position the claim accrued, which was January of 1996. And at that time, all we had was an administrative form that had been erroneously filled out. What in the world had been vindicated for Mr. Huber in 1996? That would be nothing. I mean, his claim doesn't accrue until the legitimacy of the incarceration under the state's normal procedures has now been found to be wanting. And so this is not like a Fourth Amendment claim, an unlawful arrest claim, a Miranda claim, things that accrue at the time they happened. He doesn't get anything like vindication until a time well within Wisconsin's six-year statute of limitations. Wisconsin has a generous statute, but that's what it is. Respectfully, Your Honor, it's the state's position that the claim accrued when he had a complete and present cause of action against these three defendants. But he doesn't, because part of the cause of action is somebody putting a gold star on his record and saying you were wrongfully detained, and the state of Wisconsin certainly did not take that position in 1996. He had a complete and present cause of action the day that Ms. Anderson stamped that paperwork incorrectly and he was injured and unlawfully on supervision. Then you must think that Edwards was wrongly decided, because on that reasoning the defendant, the prisoner, had a complete and present cause of action the day the prison committee wrongly extended his incarceration. But the Supreme Court held otherwise. That's why I'm asking you to discuss Edwards rather than just assert the opposite of Edwards. Okay. I think that Edwards, I don't necessarily think that Edwards was wrongly decided. I think it was an extension of what Heck was worried about, which is competing judgments. Well, it was, but it was an extension by the Supreme Court, which is our problem. Correct. But I want to go back then to say that that's not what, we don't even have what they had in Edwards here. We had Ms. Anderson filling out a form. Where's the vindication? What's the first moment in which the machinery of justice vindicated Mr. Huber's position? Well, to answer that question, it was when. Well, it's not 1996, right? That's correct. But again, Wallace says you need to look at when your claim accrued. His claim accrued against them in 1996, and there was no- No, it doesn't say that. It says, it is further elaboration on various theories of wrong that people may have. And it says that a Fourth Amendment claim can accrue, and indeed does accrue, at the time of the arrest because you can be wrongfully arrested and still guilty as all get out. The link isn't there, so you need to promptly raise your claim, the court says in Wallace, get it adjudicated. It's not inconsistent with the validity of the conviction. It's not inconsistent with the sentence of incarceration. But an Eighth Amendment claim, if it challenges anything, it challenges the duration of confinement. I mean, you can't just take innocent people and put them in prison for a few years because you feel like it. The Eighth Amendment says no. I think that we have a disagreement about accrual versus damages. No, we do not. I am relying on the language in Heck and Edwards about the accrual of a claim that fundamentally contradicts the validity of the criminal prosecution. We have strong interests in finality for criminal prosecutions. We limit people's ability to make collateral attacks on them. And so the system the Supreme Court set up is there are a lot of claims, if you were successful and it undermined a foundation of the criminal conviction, you can't bring them under 1983 until the conviction's been set aside. That's how the court, you know, there's a lot of law that sort of sorts out the realm of habeas from the realm of 1983. So it doesn't even accrue until you've been vindicated. That's what the court says. You can't bring the claim until you've wiped out problematic conviction. Right, okay. Well, again, what the state was relying on was Justice Scalia's definition of accrual at the common law as it appears in Wallace, which is when you have an injury and damages and that's day one. But Justice Scalia didn't say a word in Wallace against Cato to the effect that he was now inclined to overrule Heck or Edwards. Believe me. I mean, you know, we've all studied these things many times, and that's not what he said. The court wouldn't have done it surreptitiously. Well, let me just also point this out. And that's a different claim than what we have here. Indeed. I don't know if we can extend that to this Eighth Amendment violation where as he pled and briefed in summary judgment, his injury was when they unlawfully put him on probation. So how could he prove that injury without collaterally attacking the administrative decision to continue his probation? So he would have to show that that administrative decision was a mistake. And that's what you can't do until the proper authorities have set it aside. Right. And that kind of gets back to the Balasag case and how far out we're going to go from what Heck was worried about, which was, again, collaterally attacking a criminal judgment. Edwards against Balasag says that Heck is not limited to criminal judgment. That's true. It includes administrative decisions that affect the length of custody. And I can't see what happened here as anything other than an administrative decision that affected the length of custody. That's why I keep asking you about Edwards. Okay. So it was an administrative decision in this case that was made without a hearing, without any adjudication. If we were looking at the Balasag case, there was at least that amount of process there. Why does that matter? Why does that matter under Edwards? Because I want to get at the policy concerns that the Supreme Court had in Heck, which would be collaterally attacking a criminal judgment where another judge had found probable cause and built beyond a reasonable doubt. The whole point of Edwards is that the Heck Doctrine doesn't depend on judges. It doesn't depend on trials. It doesn't depend on criminal convictions. It depends on custody. While the custody lasts and you would need a collateral attack to upset it, the claim doesn't accrue. That's the holding of both Heck and Edwards. And as I say, why I keep asking about Edwards. Right. And I think that what we have here, and the record is clear about this, was we had a DOC employee erroneously filling out a form, and that is not the same as what we had in the Balasag case. Well, we have more than that. I mean, we have evidence in the record that a person was well aware that November 3rd was the date and then just deliberately suppressed that fact. None of these things may wind up being true, but to go forward with a case, there are, I'm not sure everybody he sued, but there are a number of the people that he sued who were personally responsible and who allegedly deliberately disregarded their knowledge that he should have been out on November 3rd. And he winds up spending an enormously much longer time in custody. Right. Which is a, you know, it's terrible for him. It's his life. The serious mistake had unfortunate consequences, and we can't deny that. Sure. But I will say that on the face of this record, we don't agree that there is enough for a reasonable jury to infer the criminal recklessness you would need to find deliberate indifference on the part of any of the defendants. And, I mean, the court talked a little bit about Kasperzak and Hartman, who had very limited connection with him at all. Anderson, at the most, what the record shows is that she was, you know, to best what it could be. Anderson, before the release date, had accurately logged in the November 3rd date in her record, which is a fact that a jury might find very telling on a deliberate indifference theory. And Hartman is Anderson's supervisor. As I said, you may be getting too far out by the time you get to Kasperzak. That, I mean, you know, these people sometimes lump everybody together, and it's important to keep them all separate because of the way the liability rules work. But Anderson, you know, Bach, some of these people are very directly involved. Okay. And I'm happy to talk about any of them. I'll just briefly say for Bach and Walter, the record is clear that once they learned of his allegation that his probation was unlawful, Bach went to Walter and discussed it, and Walter went to the Central Records Unit. I don't think that there's enough there to show deliberate indifference. But they refused. The problem is that the records in the Central Records Unit were tainted. They refused to even take a look at the additional records he had assembled, which is why I asked whether there was any allegation even that there was something wrong with these records. I could imagine there might have been, but apparently there isn't any allegation that there's something wrong with them. So you need to have both sets of records in front of you before the problem will be revealed. You can't just look at the tainted set of records. Okay. Well, so even if the records at the Central Records Unit were somehow wrong, that doesn't make Walter deliberately indifferent. Deliberately indifferent by saying, you know, I'm going to put a blindfold on. I'm not even going to look at what you're saying. Okay. And that gets to Figgs. And we don't agree that she would be put in that same category because she did not have the independent authority to question the Central Records Unit as to what they told her. So we don't think that she's in that same posture as the defendant was in the Figgs case. With Ms. Anderson, I just want to go back and say that the record does show probably some errors on her part that were very serious errors, but, again, that's not criminal recklessness or deliberate indifference. And we think on the facts, the court could affirm the district court as to Bach and Walter, certainly, as to the Anderson, Hartman, and Kasbersack. In terms of Mr. Walczak, there's also no evidence. You know, we conceded on the statute of limitations for retaliation and for the access to courts claim, but there's no evidence that he intentionally withheld file documents and said, I'm not going to allow Mr. Huber to go forward with this case. There's just no evidence of that. Same thing with the retaliatory motive. And I would say that to the extent that Mr. Huber is making a prolonged detention claim against him, it fails for the same reasons that the state believes it fails for the first three defendants. That is all I wanted to cover. I can sit down if nobody else has questions. Thank you. I see none, so thank you very much. Anything further, Mr. Wick? Just really quickly, the point about Hartman and Kasbersack, the supervisors, whether they're too far removed, the fact that they have to sign these forms has to mean something. If every signature is just a rubber stamp, then there's no such thing as a Section 1983 case based on any of these violations. Well, maybe not against them. I mean, usually you'll find the case being against the person with the most immediate authority. True, but again, I would just point to the fact that these forms were suspicious on their face, and if, in fact, they were not involved in Anderson's wrongdoing, if they are innocent and didn't know about it, they don't get to bury their heads in the sand either. That's deliberate indifference. If you look at FIGS, it says you did nothing or you took action so ineffectual. It's ignoring a known risk, and here the risk is that someone gets two and a half years more of their life taken away. That's how long the probation was extended. So if it was extending it by 10 days, maybe you rubber stamp it, but when you're talking about two and a half years, I think that's too grave of an imposition to just, you know, next. So anyway, that's one point. And the point with Bach, that she couldn't do anything, I mean, she had the file. She could look at it. There was nothing preventing her from it. That argument is tantamount to her saying, you know, she wants to say, my supervisor told me not to look at it, so I couldn't do it. But that's saying my supervisor told me to violate Huber's rights, and so I did it, so I'm not liable. I mean, that's not a very convincing argument. So unless there's any further questions, Mr. Huber deserves his day in court, and I think a jury should get to decide who's credible in this case. So we would ask that you rule all these claims were timely under HEC and remand the case back to trial and also overturn the merits rulings in favor of Bach and Malter. All right. Thank you very much, and you took this case by appointment, I believe, from the court. Yes. We appreciate your efforts very much and those of your firm. Thank you. Thank you very much. The case will be taken under advisement.